UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 20-CV-3306 |
| v. | ) |
| | ) |
| BANK OF AMERICA N.A., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## SETTLEMENT AGREEMENT AND ORDER

### I. INTRODUCTION

This Settlement Agreement and Order ("Agreement") is submitted jointly by the Parties for the approval of and entry by the Court simultaneously with the filing of the United States' Complaint in this action. This Agreement resolves the claims of the United States that Bank of America, N.A. ("Bank of America" or the "Bank") engaged in a pattern or practice of discrimination on the basis of disability,[1] in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619.

Bank of America asserts that it did not unlawfully discriminate against any person based on a disability or otherwise, and asserts that the allegations in the Complaint concern previous underwriting guidelines, which it has since voluntarily changed, that were implemented by the Bank after the financial crisis of 2009-2010 for the purpose of protecting at-risk applicants from financial exploitation.

---

[1] Throughout this Agreement, the word "disability" is used interchangeably with "handicap," as defined in 42 U.S.C. § 3602(h).

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The Parties agree that the full implementation of the terms in this Agreement will provide a resolution of the lawsuit.

## II. BACKGROUND AND RECITALS

1. Bank of America is headquartered in Charlotte, North Carolina and does business in this District. The Bank provides a diversified range of banking and non-banking financial services and products, including a first mortgage lending business, which includes purchase and refinance loans and loan modifications, and a home equity lending business, which includes home equity lines of credit ("HELOCs") and, until July 2015, included home equity loans.

2. On December 20, 2016, the United States notified Bank of America that it had opened an investigation into whether the Bank's mortgage lending practices with respect to persons with legal guardians or conservators constituted discrimination on the basis of handicap in violation of the FHA or disability in violation of the Americans with Disabilities Act. Bank of America cooperated fully with the investigation. On September 18, 2019, the United States informed Bank of America that based on its investigation, the Assistant Attorney General for the Civil Rights Division had authorized the filing of a complaint against the Bank for discriminatory lending practices in violation of the FHA.

3. The United States alleges in the Complaint that Bank of America violated the FHA by engaging in a pattern or practice of discrimination, or a denial of rights to a group of persons that raises an issue of general public importance. Specifically, the Complaint alleges that from at least January 2010 until February 2016 in its first mortgage business, and until May 2017 in its home equity business, the Bank denied mortgage loans to certain adult applicants who had legal guardians or conservators or who sought loans on property owned by adult individuals who had

legal guardians or conservators, pursuant to written policies that did not permit home mortgage loans to such persons. The Complaint further alleges that individuals denied mortgage loans pursuant to these policies were persons with disabilities, and that Bank of America denied mortgage loans even in some circumstances where applicants made explicit requests for the Bank to consider and accept court orders specifically permitting the guardian or conservator to act on behalf of the disabled individual. The United States contends that the Bank's historical policies and practices constitute violations of the FHA, 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(B) and 3605.

4. Bank of America maintains that it did not, and does not, unlawfully discriminate on any prohibited basis in connection with its mortgage lending business, and is deeply committed to ensuring that all individuals—regardless of race, color, religion, national origin, ethnicity, sex, marital status, age, receipt of income from public assistance programs, good faith exercise of rights under the Consumer Credit Protection Act, familial status, gender identity, sexual orientation, handicap or disability—are treated equally. Starting in February 2016, the Bank voluntarily changed its underwriting guidelines at issue for its first mortgage line of business to remove restrictions on loans to adult applicants represented by a legal guardian or conservator. The Bank later voluntarily made this change for its home equity lines of business in May 2017. Bank of America asserts that during the time period in question, it did make mortgage loans to persons with handicaps and disabilities without restrictions, including some adult applicants who had legal guardians or conservatorships.

5. Bank of America denies the matters alleged in the Complaint, and further denies any liability, wrongdoing, or non-compliance with the provisions of the FHA. The Bank enters into this settlement solely for the purpose of avoiding costly litigation with the United States, and so that it can continue to dedicate its resources to meeting the needs of its customers and to serving

the communities it operates in. By entering this Agreement, Bank of America does not admit, and instead expressly denies, any liability, wrongdoing, or non-compliance with the provisions of the FHA.

6. Bank of America agrees to maintain the new underwriting guidelines described above in paragraph 4, and to continue training its employees on these guidelines, and as further provided herein, to ensure that applicants represented by legal guardians and conservators are treated in a manner that does not discriminate on the basis of disability, consistent with the requirements of the FHA. Bank of America also agrees to pay remediation to select mortgage applicants that the Parties have jointly identified and whose applications were decided under the Bank's prior underwriting guidelines as further set forth herein.

7. This Agreement is a compromise of disputed claims. The United States acknowledges the substantial cooperation of Bank of America throughout its investigation regarding the matters addressed in this Agreement.

8. The Parties agree that this Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 42 U.S.C. § 3614(a).

### III. REMEDIAL ORDER

9. The Effective Date of this Agreement shall be the date on which it is approved and entered by the Court.

10. Bank of America, including all of its respective officers, employees, agents, assignees, successors in interest, and all those in active concert or participation with any of them, shall comply with this Agreement, and shall not discriminate against adult mortgage loan applicants represented by a legal guardian or conservator solely on the basis of disability in connection with a submitted or attempted mortgage application. This prohibition includes, but is not limited to, the adoption, performance, or implementation of any policy, practice, or act that

denies a borrower's loan application solely because the applicant is represented by a legal guardian or conservator.

### A. Policies and Procedures

11. In February 2016, Bank of America published new underwriting guidelines in its first mortgage business permitting, under certain circumstances, the extension of mortgage loans to individuals represented by legal guardians or conservators. In May 2017, the Bank similarly updated its underwriting guidelines regarding the extension of HELOCs.

12. Bank of America agrees to maintain these eligibility policies or like eligibility policies for its residential mortgage businesses to ensure that adult mortgage loan applicants represented by a legal guardian or conservator are treated in a manner that does not directly or indirectly discriminate on the basis of disability, consistent with the requirements of the FHA.

13. The Bank has also published guidance regarding the review of guardianship and conservatorship documentation in connection with an application for a mortgage loan, including a document titled "Conservator/Guardian Review and Approvals (Conventional and Government)," and a "Conservatorships (or Equivalent) Matrix." The United States approved the current version of the Conservatorships (or Equivalent) Matrix on June 12, 2020. The policies and guidance described in paragraphs 11-13 shall be referred to herein as the "Conservator/Guardian Policies."

14. During the term of this Agreement, Bank of America shall submit to the United States for approval any proposed changes to the Conservator/Guardian Policies that materially affect provisions relating to the extension of mortgage loans to individuals represented by legal

guardians or conservators.[2] For the sake of clarity, non-material changes shall include, among other things, updates based on changes in state law, changes in references to other documents not at issue in the Agreement, grammatical changes, and other non-substantive changes that do not affect the availability of mortgage loans to individuals represented by legal guardians or conservators. The United States shall make a determination regarding proposed changes within 30 days of notice, or the proposed changes will be deemed to have been approved.

**B.    Employee Training and Communication**

15. Within thirty (30) days of the Effective Date of this Agreement, Bank of America shall: (a) inform residential mortgage loan originators, processors, and underwriters ("Applicable Employees") of the terms of this Agreement (including providing access to the Agreement) and (b) remind Applicable Employees of the Bank's Conservator/Guardian Policies.

16. Bank of America agrees to maintain employee fair lending training, which includes fair lending training and assessments for all employees (including newly-hired employees) in the role of residential mortgage loan originator, processor, or underwriter ("Applicable Employees"). As part of this training, and within ninety (90) days of the Effective Date of the Agreement, Bank of America shall include information on the Conservator/Guardian Policies in fair lending training for Applicable Employees, and shall communicate this information during the next scheduled fair lending training session for each Applicable Employee. The contents related to Conservator/Guardian Policies have been agreed upon by United States and the Bank. Bank of

---

[2] All material required by the Agreement to be sent to counsel for the United States shall be sent by commercial overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 150 M. Street, NE, 8th Floor, Washington, DC 20002, Attn: DJ 175-52-290 and United States Attorney's Office, Attn: AUSA Rachel G. Balaban, 271 Cadman Plaza East, Brooklyn, NY 11201. The Parties may also agree to delivery electronically.

America shall retain records concerning each Applicable Employee's participation in the fair lending training and shall make such records available to the United States upon request.

### C. Compensation for Identified Applicants

17. Within thirty (30) days of entry of this Agreement, Bank of America shall enter into a contract retaining a Settlement Administrator ("Administrator") to conduct the activities set forth in paragraphs 19-31. Bank of America shall bear all reasonable costs and expenses of the Administrator. Bank of America shall provide to the Administrator all funds required to compensate identified applicants as provided under the Agreement. Bank of America's contract with the Administrator shall require the Administrator to comply with the provisions of this Agreement as applicable to the Administrator.[3] The Administrator's contract shall require the Administrator to work cooperatively with the United States and Bank of America in the conduct of its activities, including reporting regularly to and providing all reasonably requested information to the United States and Bank of America. Bank of America shall provide the Administrator all available contact information, including addresses and email addresses for the Identified Applicants (as defined below). The Administrator's contract shall require the Administrator to comply with all confidentiality and privacy restrictions applicable to the party who supplied the information and data to the Administrator. The Administrator's contract shall require the Administrator to make its best efforts, using all reasonable methods, to locate and contact Identified Applicants. The Administrator's contract shall require the Administrator, as part of its

---

[3] In the event the United States has reason to believe that the Administrator is not materially complying with the terms of its contract with Bank of America, the United States and Bank of America shall meet and confer for the purpose of mutually agreeing upon a course of action to effect the Administrator's material compliance with its contract with Bank of America. In the event that the United States and Bank of America are unable to agree within a 30-day period upon a course of action to effect the Administrator's material compliance with its contract with the Bank of America, the parties shall present the matter to the Court.

operation, to establish cost-free means for Identified Applicants (or their guardians, conservators, attorneys or representatives) to contact it, including an email address, a toll-free telephone number, and means for persons with disabilities to communicate effectively, including TTY.

18.     The United States and Bank of America have agreed on a list of applications (completed or not) (the "Identified Applications") and the persons associated with each application who are eligible for compensation under this Agreement (the "Identified Applicants"). Individuals who, prior to the Effective Date, were compensated, received remediation from Bank of America, or otherwise released any claims against Bank of America covered by the terms of this Agreement, are not Identified Applicants and are not eligible for compensation under this Agreement.

19.     Within fourteen (14) days of the Administrator entering into a contract with Bank of America, Bank of America will provide to the United States and the Administrator the name, contact information, and Social Security number (if available) for each Identified Applicant and any guardian or conservator (if available) associated with the Identified Applicant. The contact information provided by the Bank shall include the most recent mailing address in its electronic records (and any existing instruction for the delivery of mail to the Identified Applicant), and any other available contact information, including telephone numbers and email addresses, to the extent such information is reasonably available. Upon request from the United States, Bank of America will provide other contact information to the extent that it is reasonably practicable to obtain the requested information. Such information and data shall be used by the United States and the Administrator only for the purpose of implementing this Agreement.

20.     Within thirty (30) days from receiving the information described in paragraph 19, the Administrator shall send a letter substantially in the form of Appendix A, a release in the form of Appendix B, and a postage paid return envelope to each Identified Applicant, and shall copy

the identified guardian or conservator (only in his or her capacity as a still valid guardian or conservator). All mailings under this paragraph shall be sent in advance to the United States. If the United States does not propose changes to the mailings within seven (7) days of receipt, the mailings will be deemed to have been approved.

21.     If an Identified Applicant or his or her guardian or conservator does not respond to a letter from the Administrator within sixty (60) days, the Administrator shall take additional reasonable steps to confirm the current or updated address of the Identified Applicant and guardian or conservator and shall send a second letter to the current or updated addresses via Federal Express. The additional reasonable steps taken by the Administrator shall include (a) searching for updated addresses via Bank of America's own address records and via Clear, Lexis Nexis, or other suitable address databases, (b) sending duplicate letters to updated addresses, and (c) contacting Identified Applicants by telephone. At its own cost, the United States may make its own efforts to locate Identified Applicants and guardians or conservators.

22.     The Administrator shall provide to the United States and Bank of America a monthly accounting of releases received, notifications for which no response has been received or that were reported to be undeliverable, and any re-mailings.

23.     Within six (6) months of entering into a contract with Bank of America, the Administrator shall provide to the United States and Bank of America the following: (a) a list of Identified Applicants who have submitted executed releases and are therefore entitled to compensation, along with the amount of compensation for each Identified Applicant (the "Compensation List"); (b) copies of the executed releases; and (c) a list identifying the current status of efforts to contact those Identified Applicants who have not yet submitted executed releases (the "No Release List").

24. Within fifteen (15) business days of receiving the Compensation List, Bank of America shall send to the Administrator a separate check payable to each Identified Applicant on the Compensation List in the amount identified on the Compensation List. The Administrator shall transmit the funds to each Identified Applicant on the Compensation List within ten (10) business days of receipt of checks from Bank of America.

25. The Parties have agreed on a compensation amount of $4,000 for each Identified Application. If there is more than one Identified Applicant for an Identified Application, the compensation amount shall be split among the Identified Applicants as described in Appendix A.

26. The Administrator shall mail one reminder postcard to all Identified Applicants on the Compensation List who have not deposited their checks within forty-five (45) days of the mailing of such checks. For any payment that is returned to the Administrator as undeliverable, or not deposited within three (3) months of the date the check was mailed, the Administrator shall make reasonable efforts to locate and contact the Identified Applicant on the Compensation List. If the Administrator is able to locate another address, the Administrator shall redeliver those payments returned as undeliverable. If after a second attempt to deliver payment an Identified Applicant on the Compensation List has not deposited the check, upon request of the United States or upon request of individuals on the Compensation List, Bank of America shall reissue a new check to that Identified Applicant. Bank of America or the Administrator shall provide to the United States a monthly accounting of the checks deposited, the checks that are not deposited within three (3) months of their mailing, the returned checks, results of the efforts relating to returned and uncashed checks, and re-mailing of checks.

27. No Identified Applicant shall be paid any amount under this Agreement until he or she has executed and delivered to the Administrator a written release as set forth in Appendix B.

28. Bank of America shall not be entitled a set-off, or any other reduction, of the amount of payment to an Identified Applicant on the Compensation List because of any debts owed to Bank of America by an Identified Applicant.

29. The Administrator shall (unless directed by the United States otherwise) continue reasonable efforts to follow-up with the Identified Applicants on the No Release List periodically, up until one year after the Effective Date. If the Administrator is able to obtain an executed release from an Identified Applicant on the No Release List, the Administrator shall provide such release to the United States and Bank of America, and Bank of America agrees to compensate the Identified Applicant consistent with paragraphs 24-28.

### D.   Identification of Additional Applicants

30. During the first year of the Agreement, if any person, including individuals associated with loans that are not Identified Applicants, contacts the United States, Bank of America, or the Administrator claiming that he or she should be paid as an additional Identified Applicant, Bank of America shall undertake a review of all records related to the mortgage application of that person. Bank of America shall report to the United States all such contacts and the results of the review of records, and, provided that the person applied for a loan with the Bank under its prior underwriting guidelines and was denied a loan as a result of the Bank's prior underwriting guidelines related to guardianship or conservatorship and for no other eligibility factors, the United States may determine that the person should be paid as an additional Identified Applicant.

31. After one year from the Effective Date, Bank of America may, but shall have no obligation to, compensate any Identified Applicant or additional Identified Applicant who has not requested payment.

## IV. EVALUATING AND REPORTING COMPLIANCE

32.  Bank of America will continue to monitor loan processing and underwriting activities for compliance with fair lending requirements, including those related to the Conservator/Guardian Policies and this Agreement, to detect any discrimination toward individuals represented by legal guardians or conservators in first mortgage and HELOC residential mortgage loan applications received after the Effective Date through the duration of this Agreement.

33.  For the duration of this Agreement, every six (6) months, Bank of America will report to the United States as follows:

   a. The Bank shall confirm its maintenance of the Conservator/Guardianship Policies in Paragraphs 11-13 and shall confirm that there have been no material changes to such policies that have not been submitted to the United States, as set forth in Paragraph 14;

   b. The Bank shall confirm its compliance with the training and communication requirements in Paragraphs 15-16;

   c. The Bank shall confirm its compliance with Paragraph 32 by notifying the United States if its ongoing monitoring pursuant to that paragraph has detected any discrimination towards individuals represented by legal guardians or conservators in connection with a residential mortgage loan application; and

   d. The Bank shall report on any complaints it has received regarding a mortgage loan application that was not approved (including those that were denied, withdrawn, or closed for incompleteness) and that involved an adult applicant represented by a guardian or conservator, which report will

include: (i) the loan application number; (ii) the name of the borrower; (iii) the name of the guardian or conservator; (iv) the nature of the complaint; and (v) how the complaint was resolved.  The United States also reserves its right to ask for additional documentation regarding the associated loan application, complaint and its resolution after receipt of the aforementioned report.

34. For the duration of this Agreement, Bank of America shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein.  The United States shall have the right to review and copy such records upon request, including files and electronic data for mortgage applications made during the duration of the Agreement.

## V. ADMINISTRATION

35. The Agreement shall remain in effect for twenty-four (24) months after the Effective Date.  Notwithstanding the above, the Agreement may be extended further upon motion of the United States to the Court and a showing of good cause to believe that Bank of America has failed to satisfy the terms of this Agreement.

36. The requirements in administration, including the terms and arrangements for distribution of compensation set forth in paragraphs 17-31, may be modified by written agreement of the Parties and without further Court approval.  Any time limits for performance fixed by the Agreement may be extended by written agreement of the Parties.  Other modifications to the Agreement may be made only upon approval of the Court, upon motion by either party.

37. The Agreement shall be binding on Bank of America, including all its officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them with respect to mortgage loans extended or intended to

be extended by Bank of America. In the event Bank of America seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, Bank of America shall obtain the written agreement of the successor or assign to any obligations remaining under the Agreement for its remaining term and with respect to legacy Bank operations.

38. Nothing in the Agreement shall excuse Bank of America's obligation to comply with any currently or subsequently effective provision of law or order of a regulator with authority over Bank of America that imposes additional obligations on Bank of America.

39. The Parties agree that, as of the Effective Date, litigation is not "reasonably foreseeable" concerning the matters described in the Agreement. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the Agreement, the party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any party of any other obligations under this Agreement.

40. In the event that any dispute arises about the interpretation of or compliance with the terms of the Agreement, the Parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. If the United States believes that Bank of America has violated any provision of the Agreement, it will provide the Bank written notice thereof and allow 30 days to resolve the alleged violation before presenting the matter to this Court. In the event of either a failure by the Bank to perform in a timely manner any act required by the Agreement or an act by the Bank in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

41. Bank of America's compliance with the terms of this Agreement shall fully and finally resolve and release Bank of America and all related entities, subsidiaries, parents, predecessors, successors, and affiliates, and all of their past and present directors, officers, agents, managers, supervisors, and employees and their heirs, executors, administrators, successors, and assigns, from all claims, rights, remedies and recoveries under the FHA, the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*), the Equal Credit and Opportunities Act (15 U.S.C. § 1691 *et seq.*), and similar federal or state laws, that are, were, or could have been, raised in connection with the United States' investigation, as described in the United States' letter dated December 20, 2016, and/or the Complaint's allegations of discrimination on the basis of handicap or disability, including all claims for equitable relief and monetary damages and penalties arising from those claims, for mortgage and HELOC applications made to Bank of America, or any of its affiliated entities, including applications submitted by or for the Identified Applicants, between January 1, 2010 and the May 4, 2020.

42. This Agreement does not release any other legal claims, including claims that may be held or are currently under investigation by any federal agency. This Agreement does not release claims for practices not addressed in the Complaint's allegations, including claims that may be held or are currently under investigation by any federal agency, or any claims that may be pursued for actions that may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal Banking Agency ("FBA"), as defined in 12 U.S.C. § 1813(q), against Bank of America, any of its affiliated entities, and/or any institution-affiliated party of Bank of America, as defined in 12 U.S.C. §1813(u), pursuant to 12 U.S.C. § 1818 or any statute or regulation. The Agreement does not resolve and release any claims other than claims for discrimination.

43. The United States and Bank of America shall bear their own costs and attorneys' fees associated with this litigation.

44. The Court shall retain jurisdiction for the duration of the Agreement to enforce the terms of the Agreement, after which time the case shall be dismissed with prejudice upon application of the United States or the Parties jointly.

The undersigned hereby apply for and consent to the entry of the Agreement:

**For Plaintiff United States of America:**

Dated: July 23, 2020                                          Respectfully submitted,

SETH D. DuCHARME                                              ERIC S. DREIBAND
Acting United States Attorney                                 Assistant Attorney General
Eastern District of New York                                  Civil Rights Division

/s/ Rachel G. Balaban                                         SAMEENA SHINA MAJEED
RACHEL G. BALABAN                                             Chief
Assistant United States Attorney
271 Cadman Plaza East                                         /s/ Katherine A. Raimondo
Brooklyn, New York 11201                                      LUCY G. CARLSON
Phone: 718-254-6028                                           Deputy Chief
Fax: 718-254-6081                                             KATHERINE A. RAIMONDO
E-mail: rachel.balaban@usdoj.gov                              Trial Attorney
                                                              Housing and Civil Enforcement Section
                                                              Civil Rights Division
                                                              U.S. Department of Justice
                                                              4 Constitution Square
                                                              150 M Street, NE, 8th Floor
                                                              Washington, DC 20530
                                                              Phone: (202) 305-1987
                                                              Fax: (202) 514-1116
                                                              Katherine.Raimondo@usdoj.gov

                                                              Attorneys for Plaintiff
                                                              United States of America

**For Bank of America:**

Dated: 7/22/2020

Respectfully submitted,

*[signature]*

Robert Kelly
Senior Vice President
Bank of America, N.A.

/s/ Alyssa A. Susman
ALYSSA A. SUSSMAN
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
Phone: (212) 459-7284
Fax:  (617) 801-8854

W. KYLE TAYMAN
THOMAS M. HEFFERON
Goodwin Procter LLP
1900 N St, NW
Washington, DC 20036
Phone: (202) 346-4245
Fax: (202) 204-7309

SO ORDERED, this 11th day of September , 2020.

   s/Ann M. Donnelly
UNITED STATES DISTRICT JUDGE

## APPENDIX A

[Letter to Identified Applicants]

Re: <u>United States v. Bank of America, N.A.</u> (E.D.N.Y.)

I am writing on behalf of the U.S. Department of Justice. We want you to know that you are eligible to receive compensation from our settlement with Bank of America, N.A. ("Bank of America").

In [MONTH] 2020, Bank of America agreed to settle the United States' claims regarding discrimination in mortgage lending on the basis of disability for certain mortgage loan applications made to the Bank between January 2010 and May 2017. Although Bank of America denies any wrongdoing or violation of law, Bank of America has agreed to compensate applicants and homeowners who were denied (or may have been denied) mortgage loans or home equity lines of credit because the applicant, or a co-borrower had a legal guardian or conservator.

**Under the settlement, [IDENTIFIED APPLICANT] is entitled to receive a payment of $XXX. To get a check, [IDENTIFIED APPLICANT], or someone legally authorized to act on their behalf, must complete, sign and return the enclosed Release form by [DATE], by mail in the enclosed pre-addressed postage pre-paid envelope.** We expect checks will be mailed to all participating applicants and homeowners a few months following the participation deadline.

If you made an application for a loan with another person (a co-borrower), each of you will receive separate letters. Each co-borrower is entitled to receive only one-half of the payment for that application. You should decide for yourself whether to take part in the settlement.

You do not need to hire a lawyer in order to participate in the settlement. However, you are free to consult an attorney of your choice, at your own cost, to discuss whether to participate and to obtain more information regarding the settlement's possible financial impact upon you.

To confirm this is not a scam, you may review the order entered by the United States District Court for the Eastern District of New York in this case, which is available at [website address.] If you have questions about the settlement, or if any of your contact information changes, please contact [name and contact information for Administrator].

## APPENDIX B

### Release

In consideration for the parties' agreement to the terms of the Settlement Agreement and Order entered in United States v. Bank of America, N.A. (E.D.N.Y.), and the payment to me of $_____, pursuant to the Settlement Agreement and Order and effective upon that payment, I hereby release and forever discharge any and all claims, rights, remedies and recoveries, whether known or unknown, related to the facts of handicap or disability discrimination related to my application(s) for a residential mortgage or home equity line of credit ("loan application") that arise out of or relate to the facts or claims asserted in the referenced litigation, including claims brought under the Fair Housing Act (42 U.S.C. §§ 3601-3619), American with Disabilities Act (42 U.S.C. § 12101 *et seq.*)), Equal Credit and Opportunities Act (15 U.S.C. § 1691 *et seq.*), and similar federal or state laws, that are, were, or could have been asserted by me or on my behalf, up to including the date of execution of this release.

I understand that I am releasing those claims, rights, remedies and recoveries of discrimination related to my loan application that I may have against Bank of America and all of its related entities, parents, predecessors, successors, and affiliates, and against any and all of their past and present directors, officers, agents, managers, supervisors, and employees and their heirs, executors, administrators, successors, and assigns.

I acknowledge and understand that by signing this Release, I am waiving my right to pursue my own legal action against Bank of America based on discrimination related to my loan application.

Executed this ___ day of _____, ____.

_____
Signature

_____
Print Name

_____
Address

Explanation of Signatory Status (Guardian / Conservator / Power of Attorney / Other):